**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL J. KINLIN,** | ) | **Case No.  1:12 CV 581** |
| | ) | |
| **Plaintiff,** | ) | **Judge Dan Aaron Polster** |
| | ) | |
| **vs.** | ) | <u>**MEMORANDUM OF OPINION**</u> |
| | ) | <u>**AND ORDER**</u> |
| **TROOPER SHAWN KLINE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

Before the Court are the following fully-briefed motions:

1.    Plaintiff Kinlin's Motion for Partial Summary Judgment, etc (**Doc #: 21**), and

2.    Defendant Trooper Shawn Kline's Motion for Summary Judgment (**Doc #: 25**).

For reasons explained below, the Court **DENIES** Plaintiff's Motion (Doc #: 21) and **GRANTS**

Defendant's Motion (Doc #: 25).

**I.**

On the evening of March 11, 2011, Plaintiff Michael Kinlin was driving on Lake Avenue

headed toward Broad Street in the City of Elyria, Ohio.  He was in the right lane of two lanes

traveling southbound on Lake Avenue, among a tight cluster of six or seven cars covering both

lanes.  Kinlin, who apparently wanted to move into the left lane in order to make a left turn onto

Broad Street, applied his turn signal barely a moment before cutting between two cars in the left

lane.  (Doc #: 24 ("Video") 21:02:15-22.)  Defendant Highway Patrol Trooper Shawn Kline,

who observed this maneuver (which is documented on his cruiser's video camera), asserts that

he then saw Kinlin drift over the center line while making the turn.  After completing the turn,

Trooper Kline pulled Kinlin over.

When Trooper Kline approached the car, Kinlin lowered his window.  Kline asked Kinlin

if he knew why he was stopped, to which Kinlin responded, "No."  (Video 21:03:17.)  Trooper

Kline explained that he pulled him over because he cut off the SUV when he changed lanes, and

he drifted left of the center line when he made the turn.  (Id. 21:03:17-23.)  Trooper Kline, who

detected the smell of alcohol, asked Kinlin how many drinks he had had, to which Kinlin

responded that he had  "actually had two beers."  (Id. 21:03:23.)  Trooper Kline then told Kinlin

to exit his vehicle and directed him to the sidewalk behind the car.  When Trooper Kline

attempted to administer the Horizontal Gaze Nystagmus Test ("HGN Test") to Kinlin, he refused

to take it.  (Video 21:04:11-19.)  Kline then told Kinlin he was placing him under arrest.  (Id.)

Kinlin balked at being arrested, stating that he was not drunk and he had had only had two beers.

(Id.)  Trooper Kline then gave Kinlin two more chances to take the field sobriety test before

arresting him, but Kinlin refused.  (Id.)  Trooper Kline arrested Kinlin for operating a vehicle

while under the influence of alcohol or drugs (otherwise known as OVI), handcuffed him, and

placed him in the backseat of his cruiser.

It was not until well after he was seated handcuffed in the cruiser that Kinlin offered to

take the field sobriety test – which offer Trooper Kline declined.  (Video 21:05:29-40.)

According to Kline, once he arrests someone for OVI, he will not release that person until he

transports the person to his patrol post, administers the breathalyzer test, and determines that the

person is below the legal limit – which is what occurred in this case.  The breathalyzer indicated

that Kinlin's blood alcohol level was .012, well below the *per se* legal limit of .08, and he was released from custody.[1]

Based on these facts, Kinlin filed the instant action alleging state and federal claims against Defendants Kline and Colonel John Born of the Ohio State Highway Patrol in their individual capacities, and against the Highway Patrol.  (Doc #: 1.)  In a Memorandum of Opinion and Order issued on August 31, 2012, the Court dismissed all but the Fourth Amendment claim against Trooper Kline for his alleged unconstitutional arrest of Kinlin in violation of 42 U.S.C. § 1983.  (Doc #: 12.)  It is this claim that is the subject of the parties' cross-motions for summary judgment (Doc ##: 21, 25).

## II.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the moving party shows that there is no genuine dispute of material fact.  Fed. R. Civ. Pro. 56(a).  In considering a summary judgment motion, the Court must construe the evidence in favor of the non-moving party.  *Muncie Power Prod., Inc. v. United Tech Auto Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  However, the court is not "obligated to wade through and search the entire record for some specific facts that might support the non-moving party's

---

[1]Although Kinlin was released following the breathalyzer test results, he was cited for Improper Handling of a Firearm in a Motor Vehicle in violation of O.R.C. 2923.16.  When he was sitting in the back of the cruiser, Trooper Kline asked him if he was "carrying" to which he responded, "No." (Video 21:07:48-50.)  It was not until he was on the way to the post that he revealed he had a Taurus 9 mm gun in a lockbox in the car.  (Id. 21:16:29.)  Kinlin, a former prosecutor, testified at deposition that he knew he was required by law to tell Trooper Kline that he had a weapon in the car when he was pulled over.  (Id.)  Kinlin also admitted that his CCW permit had expired two years prior to this incident.  (Id.)  Notwithstanding these undisputed facts, the firearm charge was subsequently dropped.

claims." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).  Furthermore, where a video camera captures the events in question, the Court must view the facts in the light depicted by the video.  *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012) (citing *Scott v. Harris*, 550 U.S. 372, 378-81 (2007)).

Defendant Kline seeks judgment in his favor because he had probable cause for the arrest and, in any event, he is protected from civil damages by the doctrine of qualified immunity. (Def. Br. at iv.)  Plaintiff Kinlin argues that his arrest by Trooper Kline was unconstitutional because Kline acted without probable cause, and did so in such an unreasonable fashion as to eliminate his qualified immunity protection.  (Pl. Br. at 15.)

The Court has reviewed the motions, the opposition briefs (Doc ##: 26, 29), the reply briefs (Doc ##: 30, 31) and the record, and is prepared to issue a ruling based on the material undisputed facts.

### III.

Plaintiff alleges that his arrest by Trooper Kline for OVI violated the Fourth Amendment of the U.S. Constitution under 42 U.S.C. § 1983.  To bring a § 1983 claim, Plaintiff must set forth facts establishing (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) such deprivation was caused by a person acting under the color of state law.  *Miller v. Sanilac Cnty.*, 606 F.3d 240, 247 (6th Cir. 2010).  Defendant asks the Court to grant judgment in his favor based on the undisputed facts.  Plaintiff asks the Court to grant judgment in his favor on the question of liability only, and to submit the question of damages to a jury.

Basically, Plaintiff argues that Defendant did not have a constitutionally sufficient basis for pulling him over in the first place.  Because his traffic stop violated the Fourth Amendment, the Court cannot consider what happened after he was pulled over as a basis for arresting him for driving while impaired – thus applying the exclusionary rule in criminal cases to this civil case. Even if the exclusionary rule does not apply, there was insufficient probable cause for arresting him for OVI.  Finally, Defendant is not protected by qualified immunity because a reasonable officer in Defendant's shoes could not possibly have found probable cause to arrest him for OVI.

### A.    The Traffic Stop

Plaintiff Kinlin asserts that the moving traffic violations could not serve as probable cause to stop him for impaired driving.  This argument fails, in the first instance, because the evidence clearly shows that Kline did not stop Kinlin because he suspected Kinlin of impaired driving.  Rather, as Kline explained *in detail* to Kinlin at the time he was pulled over (and which is captured on videotape), he stopped Kinlin for two lane violations.  (Video 21:03:17-23.)  An officer can properly stop a vehicle if he has probable cause for a completed traffic violation. *United States v. Simpson*, 520 F.3d 531, 539-41 (6th Cir. 2008) (citing *United States v. Freeman*, 209 F.3d 464 (6th Cir. 2000)).

Furthermore, the video confirms that Kline had probable cause to stop Kinlin for making an unsafe lane change.  Under O.R.C. 4511.33(A)(1), "A vehicle. . .  shall be driven as nearly as practicable, entirely within a single lane or line of traffic and shall not be moved from such a lane or line until the driver has first ascertained that such movement can be made with safety." Kinlin argues that he did not make an unsafe lane change because he applied his turn signal before changing lanes and the driver of the trailing SUV applied her brakes to allow him room to

make that change.  The video shows, however, that Kinlin applied his turn signal pro forma (i.e., as a matter of form only) before cutting in front of the SUV, and that the SUV driver applied her brakes after Kinlin started changing lanes.  Kinlin himself admitted at deposition that the question of whether he made an unsafe lane change was a "close" call:

> Q.     And, again, you acknowledged that you were close when you pulled in front of the vehicle before executing the left hand turn; correct?
>
> A.     Yes.  **You can see it on the video.**

(Kinlin Dep. at 25 (emphasis added).)  In short, Trooper Kline had probable cause to pull Kinlin over for making an unsafe lane change.

The parties dispute whether Kinlin veered over the center line before he was pulled over. Whether or not Kinlin veered over the center line is irrelevant to the probable cause determination because of the Court's conclusion that Trooper Kline had probable cause to stop Kinlin for an unsafe lane change.

Even if, as Kinlin repeatedly alleges, Trooper Kline suspected him of OVI when stopping him for a lane violation, such motive does not create a Fourth Amendment violation because an officer with probable cause may stop a vehicle for a traffic violation "even if the offense is minor and the stop is merely a pretext to investigate other crimes."  *United States v. Randall*, 62 Fed. Appx. 96, 99 (6th Cir. 2003) (citing *Whren v. United States*, 517 U.S. 806, 810, 813 (1996)).

Finally, Kinlin argues that the stop was unconstitutional because Trooper Kline testified at deposition that he doesn't always pull drivers over for lane violations.  Whether Trooper Kline is inconsistent about who he does, and does not, stop for lane violations is irrelevant to the question of whether he had probable cause to stop Kinlin for a lane violation *on the night in*

-6-

*question*.  Because the undisputed evidence establishes that Kline pulled Kinlin over for an unsafe lane change, and because he had probable cause to do so, this arguments fails.

### B.    The Arrest

Plaintiff alleges that Trooper Kline violated his Fourth Amendment right to be free from unreasonable seizures under 42 U.S.C. § 1983 because Kline did not have probable cause to arrest him for alcohol-impaired driving.

As a preliminary matter, Kinlin argues that, because his traffic stop violated the Fourth Amendment, none of the evidence Trooper Kline observed thereafter can be used to prove that Kinlin had probable cause to arrest him for alcohol-impaired driving.  This position assumes that the fruit-of-the-poisonous-tree doctrine which is used to exclude evidence in criminal cases, applies to civil cases.  But the Sixth Circuit has held that the exclusionary rule does not apply to civil § 1983 cases.  *See Turk v. Comerford*, 488 Fed. Appx. 933, 944 (6th Cir. 2012); *Evans v. Vinson*, 427 Fed. Appx. 437, 444 (6th Cir. 2011).  Thus, even if the Court determined that the traffic stop was unconstitutional, there would be no legal basis upon which to exclude the evidence of what occurred after the stop in considering whether Trooper Kline had probable cause to arrest Kinlin for OVI.

Defendant contends that he did in fact have probable cause for the arrest and he is protected from civil damages for the arrest by the doctrine of qualified immunity.

Qualified immunity protects a public official from being sued under § 1983 as long as the official "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Crockett v. Cumberland Coll.*, 316 F.3d 571, 579 (Sixth Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  This affirmative defense is

meant to shield officials, such as police officers, from the threat of frivolous lawsuits that might otherwise chill their professional decisionmaking.  *D'Agastino v. City of Warren*, 75 Fed. Appx. 990, 993 (6th Cir. 2003).

Once the defendant raises the qualified immunity defense, the burden shifts to the plaintiff, who must demonstrate both that the challenged conduct violated a constitutional or statutory right, and the right was so clearly established at the time that "every reasonable official would have understood that what he was doing violated that right."  *Turk*, 488 Fed. Appx. at 940 (citations omitted).  "If the plaintiff fails to establish either element, the defendant is immune from suit."  (Id.)

Kinlin claims that his arrest for OVI violated the Fourth Amendment because it lacked probable cause.  The Fourth Amendment protects the right of people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  *Ashcroft v. al-Kidd*, – U.S. –, 131 S.Ct. 2074, 2080 (2011).  An arrest qualifies as a "seizure."  *Id*.  For an officer to make a lawful arrest, he must have probable cause of an arrestable offense.  *Miller*, 606 F.3d at 248 (citing *Henry v. United States*, 361 U.S. 98, 102 (1959)).  Probable cause is present when the officer has "reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the petitioner has committed or was committing an offense."  *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  In obtaining reasonably trustworthy information, an officer must look at the totality of circumstances including available inculpatory and exculpatory factors.  *Id*. at 318.

Kinlin's arrest claim fails because he cannot show that Trooper Kline lacked probable cause to arrest him for OVI.  The material undisputed facts show that Kline observed Kinlin

-8-

make an unsafe lane change, justifying his stop for a moving traffic violation.  While conversing with Plaintiff, Defendant then noticed the odor of alcohol, and through Plaintiff's own admission was informed he had been drinking.  When given the chance to refute these indicia of impairment by submitting to an HGN test, Plaintiff refused.  When Kline offered Kinlin two more chances to take the HGN test, Kinlin again refused and Kline arrested him for OVI.  These factors, taken together, are proper factors for an officer to consider when evaluating whether to arrest someone for impaired driving, and have been determined sufficient to constitute probable cause under Ohio law.  *See*, e.g., *Vill. of Kirtland Hills v. Sulc*, 2007 Ohio 4224 (Ohio App. 11 Dist.) (finding that an odor of alcohol emanating from the vehicle, glassy eyes, admission of drinking three drinks, and refusal to perform field sobriety tests were proper factors for an officer to consider, and enough for probable cause); *State v. Homan*, 89 Ohio St. 3d 421 (2000) (finding that erratic driving, odor of alcohol, glassy eyes, and admission of drinking were proper factors to consider, and alone were enough for probable cause) *superseded by statute, O.R.C. 4511.19(D)(4)(b), on other grounds*; *State v. Harlan*, 2011 Ohio 6884 (Ohio App. 5 Dist.) (concluding that marked lane violation, smell of alcohol, and admission of alcohol consumption were enough for probable cause finding).

Kinlin argues that Kline lacked probable cause because he failed to look at the totality of circumstances before arresting him.  Specifically, Kinlin argues that Kline failed to consider the exculpatory factors (i.e., using the turn signal, being steady on his feet, and not slurring speech) as well as the aforementioned inculpatory factors in making his probable cause determination.  The evidence shows, however, that Kline was aware of, and acknowledged, these exculpatory factors when making his probable cause determination.

-9-

Q.      Now, you said in your responses to the interrogatories that Mr. Kinlin, I
        believe Number 6, that he was steady on his feet; is that correct?

A.      Yes.

Q.      Was that a reasonably observable factor available to you that militated
        against him being impaired?

A.      Yeah.  He seemed steady on his feet.

Q.      And in response to – and he did signal his turn; correct?

A.      He did.

Q.      And his speech was not slurred as you said in response to Interrogatory 8?

A.      It was not slurred, that is correct.

Q.      Those are factors that militate against him not being impaired that were
        readily observable by you, were they not?

A.      Correct.

(Kline Dep. at 49-50.)  Kline obviously placed more weight on the inculpatory factors.  He also

testified that when a driver that he has pulled over smells of alcohol, admits to drinking and

refuses to take a sobriety test, he will generally arrest him – erring on the side of caution for the

driver and the public.  (Id. at 52.)

        Kinlin argues that his arrest lacked probable cause because Kline admitted at deposition

that he did not observe any of the factors listed in the Ohio State Highway Patrol's Policy on

Alcohol/Drugged Driver Enforcement which may constitute probable cause.  (Kline Dep. at 42-

47.)  The relevant section states:

        a.      Probable Cause – An officer's observations are crucial in establishing
                probable cause upon which the traffic stop/arrest is based.  Officers have
                been trained to be constantly alert for erratic driving behaviors that
                indicate a driver's possible impairment, including:

-10-

- Straddling the center or lane marker
- Turning with a wide radius
- Weaving, Swerving, Drifting
- Driving 10 MPH below the speed limit
- Almost striking an object or vehicle
- Driving on other than designated roadway
- Stopping without cause in a traffic lane
- Following too closely
- Tires on center of lane marker
- Braking erratically
- Signaling inconsistent with driving actions.

(Doc #: 21-3 at 2 § C(2)(a).)  The problem with this argument is that Trooper Kline did not stop Kinlin for alcohol-impaired driving.  He stopped him for lane violations.  It was not until after Kline pulled Kinlin over that the indicia of impaired driving surfaced.

Kinlin then argues that it was unlawful for Trooper Kline *not* to allow him to take the field sobriety test when he offered to do so long after he was arrested.  Here, Kinlin ignores the Patrol's Policy on Alcohol/Drugged Driver Enforcement which directs that "[o]nce the driver is determined to be impaired, do not permit the driver back into the vehicle."  (Id. at 4 § E.1.)  This makes sense because, as Trooper Kline testified, "At this point, he's in the custody of the state. He's my responsibility.  If I uncuff him and he takes off running, goes out in the street and gets killed, the state and myself would be held responsible."  (Kline Dep. at 35.)

Kinlin argues that Kline did not have probable cause to arrest him because Kline testified at deposition that he did not believe that "having an odor of alcohol in and of itself is indicative of someone being impaired;" and he acknowledged that having two beers "doesn't necessarily mean that they're impaired."  It is true that neither of these factors, standing alone, establishes probable cause of impaired driving.  The argument ignores, however, the fact that one must consider the totality of circumstances when making the probable cause decision.

-11-

Kinlin also argues that Trooper Kline should have taken him at his word when he said that he only had two beers and was not intoxicated.  First, Kline testified that it was his experience that impaired drivers often lie about how much alcohol they have consumed before getting behind the wheel.  (Kline Dep. at 38, 40.)  In any event, a law enforcement officer "is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation *if the facts as initially discovered provide probable cause*."  *Gardenhire*, 205 F.3d at 316 (quoting *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) (emphasis added)).  *See also Coogan v. City of Wixom*, 820 F.2d 170 (6th Cir. 1987) ("Where there are sufficient facts to warrant a prudent person in a defendant's position to believe that a crime was committed and that the person charged committed it, the failure to make a further investigation does not negate probable cause." (internal quotation omitted)).

Assuming, arguendo, that Kinlin could show that his arrest did in fact violate the Fourth Amendment, the Court would still find that Trooper Kline is protected by qualified immunity.  The Supreme Court has held that qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law.  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Based on the totality of circumstances (i.e., the undisputed indicia of impairment, the video of the stop and the audio of the arrest, Kinlin's admissions, Kline's testimony) and Ohio case law, the Court concludes that an officer of reasonable competence could well have determined that probable cause existed for Kinlin's OVI arrest.  Therefore, the Court finds that Trooper Kline is protected by qualified immunity.

**IV.**

Accordingly, based on the undisputed facts, the Court hereby **GRANTS** Defendant's

Motion (**Doc #: 25**), **DENIES** Plaintiff's Motion (**Doc #: 21**), and enters judgment in favor of

Trooper Shawn Kline.

**IT IS SO ORDERED.**


 */s/ Dan A. Polster     July 3, 2013 *
**Dan Aaron Polster**
**United States District Judge**

-13-